UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEROME COOK,<br><br>      Plaintiff,<br><br>v.<br><br>CITIGROUP INC.,<br><br>      Defendant. | ECF CASE<br><br>No.:_____<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

NATURE OF THE ACTION

1.	Jerome Cook ("Mr. Cook"), through his counsel, files this Complaint against his prospective employer Citigroup Inc. ("Citigroup"), asserting claims of age-based discrimination and failure to hire under the Age Discrimination in Employment Act 29 U.S.C. § 623(1) (ADEA), New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

2.	Mr. Cook alleges that Citigroup willfully and knowingly violated these anti-discrimination statutes by terminating his scheduled interviews because of his age, shortly after seeing that he was "older than 28 years old," thereby failing to give him an equal opportunity to apply for employment and causing him emotional distress and economic damages.

JURISDICTION, VENUE & EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.	This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims under 28 U.S.C. § 1367.

4.Venue is proper in this District under 28 U.S.C. §§1391(b)(1), 1391(b)(2): Defendant Citigroup is a resident of this District and a substantial part of the events giving rise to the action occurred in this District.

5.This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

6.On or about October 26, 2020, Mr. Cook filed a charge with the U.S. Equal Employment Opportunity Commission and on June 15, 2021 the EEOC issued him a Notice of Right to Sue.

## THE PARTIES

7.Plaintiff Mr. Cook was and is, at all relevant times, an adult individual residing in New York, New York.

8.Defendant Citigroup was and is, at all relevant times, a foreign business corporation, organized and existing under the laws of the State of Delaware with its principal place of business at 388 Greenwich Street, New York, New York, 10013.

## STATEMENT OF FACTS

9.Citigroup is an American multinational investment bank and financial services corporation headquartered in New York City. Upon information and belief, Citigroup has over 204,000 employees.

10.Mr. Cook is a 61-year-old African American male.

11.Mr. Cook holds a B.S. degree in Aeronautics/Astronautics from the Massachusetts Institute of Technology (M.I.T.), an M.B.A. degree, with a Finance concentration, from U.C.L.A. Anderson School of Management and a J.D. degree from Rutgers School of Law.

12. In February 2020, Mr. Cook applied for the position of Senior Associate in Citigroup's Global Industrial Group, within the Transportation and Services sector.

13. On February 25, 2020, Citigroup informed Mr. Cook that he was invited to come in for a series of in-person interviews, requiring 2 hours, at their 388 Greenwich Street location. Mr. Cook accepted the invitation, and the interviews were subsequently scheduled for March 2, 2020.

14. On March 2, 2020, Mr. Cook was scheduled to interview for the Senior Associate position with Swati Rao, Vice President, at 9:00 a.m. to 9:30 a.m., Neeraj Vasudev, Managing Director, at 9:30 a.m. to 10:00 a.m., and Michael Ritter, Director, at 10:00 a.m. to 10:30 a.m.

15. Mr. Cook is and was qualified for Citigroup's Senior Associate position as he fulfilled all the requirements of the job posting, possessing necessary prerequisite experience, skills and work ethic. Additionally, Mr. Cook has previously held equivalent positions, working as a Senior Associate and a Vice President at JPMorgan Investment Bank.

16. On March 2, 2020, Mr. Cook arrived to Citigroup before 9:00 a.m. and was asked to sit in the conference room to wait for the start of his interviews.

17. At around 9:00 a.m., Ms. Swati Rao, Vice President, a woman in her late 20's or early 30s, came to meet with Mr. Cook.

18. As soon as Ms. Rao saw Mr. Cook, she was visibly surprised and paused noticeably at the entrance of the conference room before proceeding to greet him. Immediately upon sitting down with Mr. Cook, Ms. Rao revealed the reason for her surprise was his age.

19. One of the first things, Ms. Rao said to Mr. Cook even before starting the interview was: "you know most Senior Associates are 28 years old, don't you?" Mr. Cook was shocked and

could not respond to her, instead he tried to steer the conversation to discuss his work experience and previous investment banking deals he had worked on.

20.     Ms. Rao then asked Mr. Cook if "[he was] willing to deal with the time demands of this role at this stage of your life," alluding to him being an older candidate. Mr. Cook told her that he was aware of the time commitment necessary for the position, as he had worked as a Senior Associate before, and that he was eager to "roll up his sleeves" and do the job.

21.     Despite, Mr. Cook's multiple attempts to pivot the interview to discuss his qualifications for the position, Ms. Rao dismissed him saying "I have no doubt that you could do the job" and continued to keep his age as the main focus of the interview, continuing to question the suitability of his age for the Senior Associate position.

22.     During the March 2, 2020 interview, Ms. Rao failed to ask Mr. Cook about any of his skills, product knowledge or prior deals in this sector. Instead, she asked him "why would [he] want to be a Senior Associate again?" Stating that the long hours and poor work-life balance would not be suitable for someone in Mr. Cook's "stage of life."

23.     In response to Ms. Rao's ageist attitude, Mr. Cook explained to her that because he has been out of the banking industry for several years, he believed that reentering the industry as a Senior Associate was the correct strategy for him. In response, Ms. Rao once again ignored his point of view and turned it back to his age, telling him that he was best suited for a "Director or Corporate Development Role."

24.     As Ms. Rao could not get past the fact that Mr. Cook was in his 60s, she excused herself for a moment to type a text message or an email on her phone. Upon, what seemed like, a receipt of a response, Ms. Rao abruptly terminated the interview.

25. Upon the end of the interview, Ms. Rao led Mr. Cook outside of the conference room. Mr. Cook thought that he was being led to his next interview with Neeraj Vasudev, scheduled to begin at 9:30 a.m. that morning, but, in fact, Ms. Rao had escorted him to the elevators instead.

26. At the elevator, Ms. Rao told Mr. Cook that his background was "great, but not a fit" and that the two other interviews were cancelled.

27. On March 2, 2020, the same day as the interview, at 2:55 p.m., to address Ms. Rao's concerns of how the Senior Associate role would be too taxing on Mr. Cook at his age, he emailed her reiterating that he was aware, willing and able to work for Citigoup in this position:

> "Hard work and long hours notwithstanding, I remain interested in the Senior Associate role . . . . I don't mind rolling up my sleeves and re-engaging in the heavy lifting of associate life – especially in a season of increased deal flow! . . . the rigors of the role are not forgotten – I recall the 14 hour days and 84 hour week . . . I believe I have the requisite skills, experience and work ethic – and I'm content to play a supporting role in a re-entry position. . . . If helpful, I'd be glad to put you in touch with two of my former JPM managers . . . "

28. Ms. Rao did not respond to Mr. Cook's March 2, 2020 email.

29. On May 18, 2020, Mr. Cook wrote a letter to Ms. Wechter, Citigroup's Head of Human Resources, advising that on March 2, 2020, Citigroup showed more "concerns about [his] age than interest in [his] qualifications . . . for the position. [He] was denied the opportunity to complete [his] scheduled interviews with Messrs. Vasudev and Ritter and ushered to the door at the end of [his] meeting with Ms. Rao," and stating that "[he] believe[s] [he] was subjected to Age Discrimination . . . ."

30. Not receiving any response to his May 18, 2020 letter, on June 2, 2020, Mr. Cook emailed Citigroup with the letter and followed up on his submitted complaint.

31. On June 8, 2020, Adriana Barnette, Citigroup's in-house counsel, emailed Mr. Cook advising him that she has been assigned to investigate his concerns regarding his interview and requested to set up a call with him to speak about his discrimination complaints.

32. On June 18, 2020, Mr. Cook spoke to Adriana Barnette about his age discrimination complaint.

33. On August 21, 2020, Mr. Cook received a letter from Citigroup self-servingly advising him that his "concerns were carefully reviewed" and that it was "determined that the decision to not advance [him] through the interview process was based on legitimate non-discriminatory business reasons." However, Citigroup failed to explain or even mention the multiple age related comments made to him at the March 2, 2020 interview.

34. Upon seeing that Mr. Cook was over 40 years old, Citigroup wrongfully terminated Mr. Cook's scheduled interviews, taking away his opportunity to be considered for the Senior Association position, because of his age.

35. Citigroup unlawfully discriminated and treated Mr. Cook differently because of his age.

36. Upon information and belief, the Senior Associate position for which Mr. Cook applied was filled by a candidate younger than 40 years old.

37. Citigroup's discriminatory actions caused Mr. Cook severe emotional distress, including anxiety and depression.

## FIRST CAUSE OF ACTION
## AGE DISCRIMINATION UNDER THE ADEA

38. Mr. Cook repeats every preceding allegation as if fully set forth herein.

39. At all relevant times, Mr. Cook was approximately 61 years old.

40. Citigroup was an employer within the meaning of the ADEA.

41. Mr. Cook was a person and a prospective employee protected under the ADEA.

42. By the actions described in this complaint, the Citigroup discriminated against Mr. Cook on the basis of his age in violation of the Age Discrimination in Employment Act 29 U.S.C. § 623(1) by denying him the same terms and conditions of employment available to other employees and prospective employees that were younger than 40 years old, including by telling him that "most Senior Associates are 28 years old [and not 61 years old]," telling him that this role is not suitable for his "stage of life," making other age related comments and wrongfully terminating his scheduled interviews because of his age, denying him the opportunity to be employed by Citigroup.

43. Mr. Cook was subjected to disparate treatment and adverse employment actions by Citigroup in whole or substantial part because of his age, in violation of the ADEA—treatment and adverse employment actions to which no other younger applicants were subjected.

44. As a direct and proximate result of the Citigroup's unlawful and discriminatory conduct in violation of the ADEA, Mr. Cook has suffered and continues to suffer harm for which he is entitled to an award of damages, including but not limited to actual damages, compensatory damages, liquidated damages, and attorneys' fees.

45. The Citigroup's violation of the ADEA was willful and Mr. Cook is entitled to liquidated damages.

## SECOND CAUSE OF ACTION
## AGE DISCRIMINATION UNDER THE NYSHRL

46. Mr. Cook repeats every preceding allegation as if fully set forth herein.

47. At all relevant times, Mr. Cook was a prospective employee and "person" protected under the NYSHRL.

48. At all relevant times, Citigroup was an "employer" under the NYSHRL.

49. Citigroup willfully discriminated against Mr. Cook by making age related comments in his interview, terminating his scheduled interviews, taking away the opportunity to be considered for the Senior Associate position and denying him the opportunity to be employed by Citigroup because of his age.

50. By denying Mr. Cook an opportunity to be equally considered for employment at Citigroup because of his age, Citigroup violated the NYSHRL.

51. As a direct result of Citigroup's unlawful conduct, Mr. Cook suffered an adverse employment action.

52. As a result of Citigroup's unlawful discrimination because of his age, Mr. Cook has suffered and continues to suffer, *inter alia*, loss of wages, lost benefits, emotional distress, mental anguish, emotional pain and suffering, inconvenience and loss of enjoyment of life.

## THIRD CAUSE OF ACTION
## AGE DISCRIMINATION UNDER THE NYCHRL

53. Mr. Cook repeats every preceding allegation as if fully set forth herein.

54. At all relevant times, Mr. Cook was a prospective employee and "person" protected under the NYCHRL.

55. At all relevant times, Citigroup was an "employer" under the NYCHRL.

56. Citigroup willfully discriminated against Mr. Cook by terminating his scheduled interviews and taking away the opportunity to be considered for the Senior Associate position because of his age.

57. By terminating Mr. Cook's interviews because of his age and taking away his opportunity to gain employment, Citigroup violated the NYCHRL.

58. As a result of Citigroup's discrimination because of his age, Mr. Cook has suffered and continues to suffer, *inter alia*, loss of wages, lost benefits, emotional distress, mental anguish, emotional pain and suffering, inconvenience and loss of enjoyment of life.

PRAYER FOR RELIEF

WHEREFORE, Mr. Cook respectfully requests this Court grant the following relief:

a. Accepts jurisdiction over this matter;

b. Impanels and charges a jury with respect to the causes of action;

c. Back pay, front pay and all benefits along with pre and post judgment interest in the amount of at least $250,000.00, under ADEA, NYSHRL and NYCHRL.

d. Punitive, liquidated and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, loss of enjoyment of life, emotional distress in order to compensate him for the injuries he has suffered and to signal to other employers that discrimination is repulsive to legislative enactments in the amount of at least $500,000.00;

e. Award of punitive damages under NYSHRL and NYCHRL;

f. An award of pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Mr. Cook demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
June 22, 2021

LIPSKY LOWE LLP

s/ Christopher H. Lowe
Christopher H. Lowe
Milana Dostanitch
420 Lexington Avenue, Suite 1830
New York, NY 10170-1830
212.392.4772
chris@lipskylowe.com
milana@lipskylowe.com

*Attorneys for Plaintiff*